UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LIBERTY MUTUAL INSURANCE CO.,

                              Plaintiff,                    **REPORT AND**
                                                            **RECOMMENDATION**
              -against-
                                                            CV 06-391 (NGG) (ARL)
LAWRENCE BLESSINGER, SR., et al.,

                              Defendants.
------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

Before the court, on referral from District Judge Garaufis, is a motion to dismiss the

complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) made by twenty-four of

the twenty-eight defendants ("the moving defendants").[1]  For the reasons that follow, the

undersigned recommends that the motion to dismiss be denied.

**DISCUSSION**

Plaintiff, Liberty Mutual Insurance Company ("Liberty"), filed its complaint on January

30, 2006, alleging insurance fraud by the defendants in violation of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, as well as common law claims including

fraud, negligent misrepresentation, unjust enrichment, breach of contract and quantum meruit.

The moving defendants seek dismissal of the RICO and fraud-based claims pursuant to Federal

---

[1] The "moving defendants" are Lawrence Blessinger, Sr., Lawrence Blessinger, Jr.,
Marianne Blessinger, James Granelle, Luxury Limited, Luxury Transportation, Inc.,
Transportation Planning Corp., Reygan Conveyance Corp., K & J Limousine, Inc., KMO
Transportation, Inc., LBJ Auto Sales, Inc., Blessinger Leasing, Inc., All Island Taxi, Inc., All
Island Airport Service, Inc., Ollie's Airport Service, Inc., Ollie's Management Group Ltd.,
Ollie's South Shore, Inc., Ollie's Trans, Inc., MEB Conveyance Corp., Port Conveyance, Inc.,
Taxi Latino of Long Island, Inc., Fiesta Management of Long Island, Inc., RPM of Long Island,
Inc. and All Coast Agency, LLC.

Rule of Civil Procedure 9(b) because those claims are not alleged with particularity. The moving defendants also seek dismissal of the RICO and fraud-based claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because the complaint fails to state a claim upon which relief can be granted. Additionally, with the exception of defendants Luxury Limited, Reygan Conveyance Corp., K&J Limousine, Inc., Transportation Planning Corp. and KMO Transportation, Inc., the moving defendants seek dismissal of the contract and quasi-contract based causes of action pursuant to Rule 12(b)(6) because they were not parties to the insurance policies giving rise to these claims.

## I.     BACKGROUND

The plaintiff claims that the defendants engaged in various schemes designed to fraudulently obtain insurance from the plaintiff without paying the applicable premium rates. It is alleged that the defendants Marianne Blessinger, Lawrence Blessinger, Sr. and Lawrence Blessinger, Jr., aided and abetted by defendants James Granelle and the Citron Agency, Lynn Citron, Jeff Citron, and Elis Agency, Inc. ("the Broker defendants"),[2] transmitted in interstate commerce materially false and misleading information to the plaintiff including insurance applications, applications seeking to add vehicles to the policies, and responses to plaintiff's requests for information in furtherance of a scheme to defraud plaintiff of insurance premiums.

## II.    THE COMPLAINT

The complaint alleges that the plaintiff is an insurance company that was assigned by the New York Automobile Insurance Plan ("the Plan") to provide automobile insurance coverage to

---

[2] The court notes that the "Broker defendants" have not moved to dismiss and have answered the complaint on April 28, 2006. See Dkt. Entries 42-45.

defendants Luxury Limited, Reygan Conveyance Corp., K&J Limousine, Inc., Transportation

Planning Corp. and KMO Transportation, Inc. d/b/a All Island Transportation during the period

2002-2005. (Compl. at ¶¶ 1, 7, 13). The Plan allocates "high risk" insurance coverage among

insurance companies that do business in New York and, pursuant to the Plan's rules, assesses

premium rates based upon certain rating factors including the number of vehicles covered by a

policy, the nature of the applicant's business, the locale in which the vehicles are operated and

the applicant's loss history. (Id. at ¶¶ 2-4). The Plan also considers the relationship between an

insurance applicant and others insured through the Plan in determining the applicable premium.

Under the Plan, insurance rates for commonly owned or related vehicles are determined based

upon factors which can result in higher premiums based upon their loss history and/or vehicle

rating classification. (Id. at ¶ 5).

Plaintiff alleges that defendants Lawrence Blessinger, Sr., Lawrence Blessinger, Jr., and

Marianne Blessinger (collectively, "the Blessinger defendants"), "owned and managed a number

of interrelated companies that obtained, owned and used vehicles in their taxi and livery

business." (Id. at ¶ 6). Plaintiff claims that the Blessinger defendants, acting through defendants

LBJ Auto Sales, Inc. and Blessinger Leasing, Inc., (together, the "Purchasing defendants"),

purchased vehicles and then transferred title for those vehicles to other companies "owned and

controlled" by the Blessinger defendants, including defendants Luxury Limited, K&J Limousine,

Inc., Reygan Conveyance Corp., Transportation Planning Corp., and KMO Transportation Inc.

(collectively, the "Ownership defendants"). (Id. at ¶¶ 6, 13). It is further alleged that the

Ownership defendants acting in concert with the defendant insurance brokers obtained insurance

for the various vehicles by transmitting in interstate commerce false and misleading information

concerning the ownership, loss history, vehicle use, rating territories, and other material matters causing the plaintiff to under assess its risk and charge significantly reduced premiums resulting in approximately six million dollars in lost premiums to the plaintiff. The complaint describes that beginning in August 2002, defendant Lynn Citron Insurance Agency, owned by defendant Lynn Citron, was the insurance broker for the Ownership entities. (Id. at ¶ 7). After defendant Lynn Citron was decertified as a broker, the defendant Elis Agency, Inc. with which defendant Jeff Citron was associated, became the ownership entities' broker. (Id. at ¶¶ 7-8). By December 2003, defendant All Coast Agency LLC, owned by defendant Marianne Blessinger, became the insurance broker for the Ownership entities. It is alleged that the defendant James Granelle participated in the management of All Coast. (Id. ¶¶ 9, 55). According to the complaint, once insured, the Ownership entities' vehicles were then used "by the various taxi and livery companies owned, controlled and/or managed by the Blessingers" including defendants All Island Taxi, Inc., All Island Airport Services, Inc., Ollie's Airport Service Inc., Ollie's Management group Ltd., Ollie's South Shore Inc., Ollie's Trans Inc., Taxi Latino of Long Island, Inc., KMO Transportation, Inc., Fiesta Management Inc. and RPM of Long Island (collectively, "the Operating defendants"). Plaintiff alleges that the Blessinger companies and individuals are alter egos of each other based on, among other things, an overlap in ownership, officers, directors, and personnel, commingling of assets and an absence of separate management and operations. (Id. at ¶ 71)

Based on these facts, the plaintiff alleges twenty-three claims for relief: Count One alleges a violation of 18 U.S.C. § 1962(c) against all of the defendants as an association-in-fact enterprise; Counts Two through Six allege violations of 18 U.S.C. § 1962(c) against all

defendants as five separate enterprises, namely the Blessinger Companies Enterprise, the Luxury

Limited Enterprise, the Transportation Planning Enterprise, the All Coast Planning Enterprise,

and the K&J Enterprise; Count Seven alleges a violation of 18 U.S.C. § 1962(c) against

defendants Blessinger, Sr., Blessinger, Jr., Marianne Blessinger and All Coast who are allegedly

an association-in-fact enterprise; Count Eight alleges a violation of 18 U.S.C. § 1962(d) against

all defendants; Counts Nine through Seventeen allege claims against all of the defendants for

common law fraud, conspiracy to defraud, fraudulent inducement to contract, negligent

misrepresentation, and unjust enrichment; and Counts Eighteen through Twenty-Three allege

claims against defendants Blessinger, Sr., Blessinger, Jr., and Marianne Blessinger for breach of

contract, quantum meruit, enforcement of contract rights and account due.

II.     Standard of Review

Rule 12(b)(6) permits both partial and complete dismissal for failure to state a claim upon

which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss a

complaint for failure to state a claim pursuant to Rule 12(b)(6), the court must assume as true all

allegations contained in the complaint and assess only whether the plaintiff has pled claims on

which they are entitled to discovery.  Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000); Chance v.

Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).  The court may not, however, dismiss a complaint

under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief.  King v. Simpson, 189 F.3d 284, 286 (2d

Cir. 1999).

Rule 9(b) sets forth additional pleading requirements with respect to allegations of fraud.

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting

fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This provision applies

to RICO claims for which fraud is the predicate illegal act. See Moore v. PaineWebber, Inc., 189

F.3d 165, 172 (2d Cir. 1999). In order to satisfy Rule 9(b)'s heightened pleading standard, the

complaint must, "'(1) specify the statements that the plaintiff contends were fraudulent, (2)

identify the speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent.'" Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.

1994) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). However,

where a plaintiff claims that mail and wire fraud occurred in furtherance of a larger scheme to

defraud, the communications themselves are not required to have contained false or misleading

information. Breslin Realty Development Corp. v. Schackner, 397 F. Supp.2d 390, 399

(E.D.N.Y. 2005). So long as the mailings and wire transfers alleged "further an underlying

scheme that itself has a fraudulent, deceptive purpose" Rule 9(b) is satisfied. Id. at 398-99;

Calabrese v. CSC Holdings, Inc., 283 F. Supp.2d 797, 808 (E.D.N.Y. 2003) ("In such cases, a

detailed description of the underlying scheme and the connection therewith of the mail and/or

wire communications, is sufficient to satisfy Rule 9(b)."). Thus, Rule 9(b) is satisfied so long as

a "plaintiff delineate[s], with adequate particularity, the specific circumstances constituting the

overall fraudulent scheme." Id.

III. Plaintiff's RICO Claims

A.    Compliance With Rule 9(b)'s Pleading Requirements

According to the moving defendants, the plaintiff's RICO claims brought pursuant to

§1962(c) against Lawrence Blessinger, Jr., Marianne Blessinger, the Purchasing defendants, the

Ownership defendants, the Operating defendants, All Coast Agency, LLC and James Granelle are

defective because they fail to allege with the requisite specificity the alleged fraudulent conduct of each of these defendants. While the moving defendants are correct that such claims must be alleged in accordance with the particularity requirements of Rule 9(b), the undersigned finds that this test is met.

The instant complaint describes in detail a scheme spanning at least three years designed by the defendants to defraud the plaintiff into charging significantly reduced insurance premiums rates. Specified in the complaint are the various defendants' roles in the scheme, the nature of the false and misleading statements providing specific examples, the dates on which the allegedly fraudulent statements were made, to whom they were made and on behalf of which particular defendant, as well as the premium charged compared to what should have been charged. (Compl. at ¶¶ 6, 10-14, 73-94, 116). The complaint also provides a detailed chart of the mailings and wire transmissions used in furtherance of the scheme including for each the defendant who transmitted the information, the dates of the submissions and the recipients. The complaint then describes how these mail and wire transmissions furthered the scheme to defraud. As an example, the first mailed communication identified in the complaint at ¶ 116 is the application for insurance by K&J Limousine mailed on August 7, 2002 to Liberty. At ¶¶ 75 and 78, the complaint clearly sets forth the allegedly fraudulent statements made therein regarding the corporate address, vehicle use, location of operation and loss history. Based on the representations made in that application, the annual premium was calculated to be $6,319 for the coverage K&J obtained from Liberty. (Compl. at ¶¶ 76-77). Had truthful information been provided to Liberty, the plaintiff alleges that the premium would have been $33,911. (Id. at ¶ 78). Similarly, the communications by K&J identified at ¶ 116 of the complaint regarding the

addition of vehicles to the policy issued by Liberty mailed on January 3, 2003, August 28, 2003 and November 24, 2003 are addressed at ¶¶ 79-80, where the plaintiff claims that the false representations identified in ¶¶ 75 and 78 were repeated. As a result, the plaintiff insured twelve vehicles under the K&J polices at a cost of $86,543 when the true premium should have been $427,016. (Id. at ¶ 80). The allegations with regard to the other alleged enterprises include this degree of specificity. (Id. at ¶¶ 81-84, 86-94,116). Thus, the complaint sufficiently delineates "the specific circumstances constituting the overall fraudulent scheme." Calabrese, 283 F. Supp.2d at 808. The court addresses each moving defendant below.

a.      The Individual Blessinger Defendants

As a threshold matter, with respect to the individual Blessinger defendants, while the moving defendants seek dismissal of the complaint against Blessinger, Sr. pursuant to Rule 9(b), their papers are devoid of any argument in this regard. Rather, their arguments are limited to Blessinger, Jr. and Marianne. Notwithstanding the moving defendants' failure to undertake this analysis, the court has reviewed the allegations against Blessinger, Sr., and finds that they are adequately pled. (Compl. at ¶¶ 6, 10, 16, 18, 26-28, 58, 63, 72-73, 75, 81-82, 85, 90-91). Thus, the court turns its attention to the allegations against Blessinger, Jr. and Marianne.

According to the complaint, Blessinger, Jr. and Marianne Blessinger are alleged to have caused Liberty substantial financial losses through their ownership, management and control (along with their father, Blessinger, Sr.,) of the Purchasing, Ownership and Operating defendants. The complaint describes that the Blessinger Purchasing, Operating and Ownership companies, many of which had common addresses and phone numbers, were used interchangeably by the individual Blessinger defendants in order to advance their fraudulent scheme. For example, the

complaint describes that defendants KMO and Transportation Planning both claimed to be doing business as All Island Transportation. Transportation Planning also claimed that it was doing business as All Island Taxi. (Id. at ¶ 63). A vehicle initially registered to the defendant Transportation Planning, was re-registered to IP Travel and then to the defendant KMO. (Id. at ¶ 60 ). Apart from the allegations concerning the Blessinger defendants' business structure, the allegations of fraud involving Blessinger, Jr. specifically include that he submitted insurance applications to the plaintiff on behalf of defendants Luxury Limited, K&J and Reygan which contained false and incomplete information intended to mislead plaintiff. (Id. at ¶¶ 10, 73-80). The complaint details the nature of the false statements including that the insured vehicles would be used as school buses in eastern Suffolk when in fact they would be used in a higher risk area and manner. The effect of these misrepresentations was to induce plaintiff to charge a lower premium then would have been required. (Id. at ¶ 10 (a)-(h)). The defendants seemingly challenge the plaintiff's usage of the term "submit" in this context suggesting that this term fails to describe Lawrence Jr.'s specific conduct. The term "submit" however is not vague and provides clear notice to the defendants of the fraudulent conduct of which Lawrence Blessinger, Jr. is accused. Similarly, the defendants' argument that plaintiff has failed to state a cause of action to the extent it is alleged that Lawrence Blessinger, Jr. withheld material information is completely meritless. Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291-92 (2d Cir. 2006) (explaining that a fraud claim may be predicated on acts of concealment "'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" ), quoting Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123 (2d Cir. 1984). Given these allegations, the court

9

finds that the plaintiff has adequately pled fraudulent conduct by Blessinger, Jr.

Similarly, with regard to Marianne Blessinger, in addition to her management and control of the Blessinger Purchasing, Operating and Ownership companies, the complaint asserts that she owned and controlled the brokerage defendant All Coast which it is alleged was central to the scheme to defraud plaintiff. More specifically it is alleged that she knowingly submitted an insurance application on behalf of the defendant KMO, in which she claimed to be the owner of KMO and concealed KMO's connection to other Blessinger companies as well as its true loss history. The complaint describes that had plaintiff been provided truthful information in this respect, KMO would have either been ineligible for coverage, or would have had to pay significantly higher premiums for coverage. (Compl. at ¶¶ 13-14). Given these allegations, the court finds that Rule 9(b) is satisfied as to Marianne Blessinger as well.

b. James Granelle

With regard to defendant James Granelle, the moving defendants claim that there is no particularized allegation of fraudulent conduct by James Granelle. With respect to Granelle, the complaint describes that he along with Marianne Blessinger managed the defendant All Coast, a brokerage company which exclusively serviced the Blessinger defendants. (Id. at ¶¶ 55, 109, 110). The complaint describes that All Coast shared an office address with at least 10 other Blessinger companies and operated as the broker for defendants Luxury Limited, K&J, Transportation Planning and Reygan all of which are alleged to be shell companies used to fraudulently obtain insurance coverage. (Id. at ¶ 54). According to the complaint, Granelle and Marianne, whose responsibilities as brokers required that they verify information, used All Coast to submit inaccurate and misleading information to the plaintiff on behalf of the above named

Blessinger corporate defendants which caused plaintiff to charge unduly low premiums for coverage. (Id. at ¶ 110). As alleged, Granelle is described as an All Coast insider, which was a vital participant in the fraudulent scheme. Given Granelle's alleged position at All Coast, the allegations against All Coast serve, at this stage of the proceedings, as allegations against Granelle. United States Fire Ins. Co. v United Limousine Service, Inc., 303 F. Supp.2d 432, 444-45 (S.D.N.Y. 2004) (rejecting argument that plaintiff did not sufficiently allege fraud against an insurance broker that allegedly misrepresented the auto risks that the plaintiff was insuring because the complaint alleged he was an insider of a corporation with respect to which it had pled fraud). The court thus finds that the plaintiff's allegations in this regard are sufficient under Rule 9(b).

c.      The Corporate Defendants

With regard to the corporate defendants, the moving defendants claim that the complaint is deficient in that it fails to allege that each entity engaged in fraudulent conduct sufficient to satisfy Rule 9(b)'s specificity requirement. This argument fails, however, because it ignores that fact that the plaintiff has alleged that the corporate entities are alter egos of one another and of the individual defendants. (Compl. at ¶ 71); see also Mezzonen, S.A. v. Wright, No. 97 Civ. 9380(LMM), 1999 WL 1037866, at *8-*10 (S.D.N.Y. 1999); Rolls-Royce Motor Cars, Inc. v. Schudroff, 929 F. Supp. 117, 122-23 (S.D.N.Y. 1996). In support of this assertion, the complaint details the common ownership, common addresses and telephone numbers, and common operation of the corporate defendants. It is alleged that corporate names were used interchangeably to advance the scheme to defraud further supporting the allegation that the corporate entities functioned as mere conduits through which the overall scheme was

implemented. Thus a group of corporate defendants were used to purchase and transfer the vehicles in question between the various taxi and livery businesses controlled by the Blessinger defendants. (Compl. at ¶¶ 6, 26, 28-29, 59, 61). Steps were then taken to register the vehicles to corporate entities with few if any assets. (Id. at ¶ 58). By this device, the defendants were also able to conceal the common ownership and loss history of the vehicles both factors which significantly impacted on the premium charged. Likewise, the Operating defendants are alleged to have benefitted from the overall fraud scheme both in receiving insurance coverage and in the payment of claims by Liberty for accidents involving vehicles operated by these defendant entities. Metropolitan Transportation Authority v. Contini, No. 04 CV 104(DGT), 2005 WL 1565524, at *5 (E.D.N.Y. July 6, 2005) (explaining that in order for a corporation to bear RICO liability for the actions of its employees, "the corporation must have received a benefit from its employee's participation in the conspiracy."), citing Local 875 I.B.T. Pension Fund v. Pollack, 992 F. Supp. 545, 569 (E.D.N.Y. 1998) (finding RICO claims were properly alleged against corporate defendant where complaint alleged that corporation's managing director "was pervasively involved in the fraudulent enterprise . . . [and] that he acted . . .for the benefit of [the corporation]"). Thus each corporate category functioned as an indispensable component to achieve the goals of the scheme to defraud. Accordingly, the undersigned recommends that the motion to dismiss pursuant to Rule 9(b) be denied.

B.     Substantive RICO Counts

        The plaintiff asserts claims pursuant to sections 1962(c) and (d) of the RICO statute. It is well-settled in this Circuit that "[t]o establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3)

that the injury was caused by the violation of Section 1962." Stein v. New York Stair Cushion Co., Inc., No. 04-CV-4741(DRH), 2006 WL 319300, at *2 (E.D.N.Y. Feb. 10, 2006), quoting DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001) (citations and internal quotation marks omitted). The court begins with an analysis of subsection (c).

      1. Section 1962(c)

Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). According to the Second Circuit, "[t]he focus of Section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d)." DeFalco, 244 F.3d at 306, quoting United States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987).

To establish a violation of 18 U.S.C. § 1962(c), "a plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Id. (citations and internal quotation marks omitted). The RICO statute defines the terms "enterprise," "racketeering activity," and "pattern of racketeering activity." 18 U.S.C. § 1961. A RICO "enterprise" "includes any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has interpreted this definition to include "a group of persons associated together for a common purpose of engaging in a course of conduct" the existence which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various

13

associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981).

"Racketeering activity" is defined by Section 1961(1) to include certain criminal acts under state and federal law including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. See 18 U.S.C. § 1961(1)(B); see also Anza v. Ideal Steel Supply Co., 126 S. Ct. 1991, 1995 (2006) ("Mail fraud and wire fraud are forms of 'racketeering activity' for purposes of RICO."). A "pattern of racketeering activity" requires "'at least two [predicate] acts of racketeering activity' committed in a ten-year period, 18 U.S.C. § 1961(5), which 'amount to or pose a threat of continued criminal activity.'" First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004). "In short, to establish a violation of 18 U.S.C. § 1962(c), a plaintiff must establish that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." DeFalco, 244 F.3d at 306 (citations omitted).

Here, the moving defendants seek to dismiss the first seven counts alleged in the complaint on the grounds that plaintiff fails to adequately allege: (1) the existence of an enterprise; and (2) the pattern of racketeering activity. The court addresses each of the moving defendants' arguments below.

i.      Enterprise

 Courts in this Circuit construe the enterprise element of RICO liberally. See, e.g., United States v. Indelicato, 865 F.2d 1370, 1382 (2d Cir. 1989) ("the language and the history suggest that Congress sought to define that term as broadly as possible") (construing 18 U.S.C. § 1961(4)). In pleading the enterprise element the plaintiff need satisfy only the notice pleading

14

requirements of Federal Rule of Civil Procedure 8(a). Breslin, 397 F. Supp.2d at 203; In re Sumitomo Copper Litig., 995 F. Supp. 451, 454 (S.D.N.Y. 1998). To demonstrate an "association-in-fact" enterprise, the plaintiff must show that a "group of persons associated together for a common purpose of engaging in a course of conduct which functioned then as a continuing unit." Procter & Gamble Co. v. Big Apple Indust. Bldgs., Inc., 879 F.2d 10, 18 (2d Cir. 1987) (internal quotations omitted), citing Turkette, 452 U.S. at 583. Under § 1962(c), the "[RICO] person and the [RICO] enterprise must be distinct." Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339, 344 (2d Cir. 1994). "Although the RICO enterprise element must be proven separately from the pattern of racketeering activity, there will often be overlap between the proof offered to show the existence of each of these elements." Breslin Realty Development Corp. v. Schackner, 397 F. Supp.2d 390, 400 (E.D.N.Y. 2005). With these standards in mind, the court considers the defendants' arguments.

According to the moving defendants, the plaintiff has pled, at most, a "series of discontinuous, separate and independent frauds, not a common plan or purpose amongst the separate defendants . . . ." (Defs. Mem. at 16). Relying on the fact that each of the defendant-entities alleged to be part of the enterprises in the first seven counts are legally discrete having separate hierarchies and structures, the defendants contend that there can be no common purpose or plan amongst these defendants as required to allege an association-in-fact enterprise. The moving defendants further argue that these counts are improper because the alleged purpose of the enterprises - - obtaining insurance at improperly reduced premiums - - is identical to the alleged pattern of racketeering activity. As such, the moving defendants contend that the complaint fails to allege conduct separate and distinct from the alleged acts of racketeering that is

required to establish an association-in-fact enterprise. The court addresses these arguments in turn below.

With regard to the moving defendants' claim that there is no allegation of a common plan or purpose the court disagrees. The allegations in the complaint clearly describe that the individual Blessinger defendants joined together for the purpose of incorporating multiple shell companies, namely the Purchasing, Ownership and Operating defendants which, with the assistance of the broker defendants, permitted them to conceal from plaintiff the true nature and scope of their taxi and livery service thereby permitting them to defraud plaintiff of millions of dollars in insurance premiums. (Compl. at ¶¶ 6-7, 10 - 20, 26, 28-29, 57, 73-94, 111). Moreover, the complaint alleges that the Blessingers intentionally structured their businesses so that responsibility for the payment of insurance premiums would accrue to companies with little or no assets effectively thwarting plaintiff's efforts to collect millions in unpaid premiums. (Id. at ¶ 58). Plaintiff's allegations thus describe an enterprise with a common purpose shared by all defendants.

The court next turns to the moving defendants' argument that the first seven counts should be dismissed because the alleged purpose of the claimed enterprises is identical to the pattern of racketeering activity. This argument is unpersuasive because "it rests on a legal standard that has been expressly disavowed by the Second Circuit." Feinberg v. Katz, No. 99 Civ. 45 (CSH), 2002 WL 1751135, at *12 (S.D.N.Y. July 26, 2002), citing Pavlov v. Bank of New York Co., Inc., 2002 WL 63576 (2d Cir. Jan. 14, 2002) (unpublished decision) (holding that the "enterprise need not necessarily have a continuity extending beyond the performance of the pattern of racketeering acts alleged" and that an enterprise may be sufficiently alleged "where the complaint alleges a group

16

without centralized hierarchy formed for the sole purpose of carrying out a pattern of racketeering acts."); <u>see also</u> <u>SKS Constructors, Inc. v. Drinkwine</u>, No. CV 05-5962 (LDW), 2006 WL 2868313 (E.D.N.Y. Oct. 6, 2006) ("[A]n enterprise is properly pled even if the pleading reveals that the group existed solely for the commission of the fraudulent acts alleged in the complaint."); <u>World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.</u>, 425 F. Supp.2d 484, 496-97 (S.D.N.Y. 2006); <u>United States Fire Ins. Co. v. United Limousine Service, Inc.</u>, 303 F. Supp.2d 432, 447-48 (S.D.N.Y. 2004); <u>Wilson v. Toussie</u>, 260 F. Supp.2d 530, 538 (E.D.N.Y. 2003).[3]

The distinction between the elements of enterprise and the elements of a pattern was examined by the Supreme Court in <u>U.S. v. Turkette</u>, 452 U.S. 576, 583 (1981), where the Court explained:

> The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. The former is proven by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The enterprise is not the pattern of racketeering activity; it is an entity separate and apart from the pattern of activity in which it engages.

<u>Turkette</u>, 452 U.S. at 583 (citation omitted). Although a number of district courts within this circuit have interpreted Turkette to require evidence of distinctiveness between the enterprise and the racketeering activity, the Second Circuit has held otherwise. <u>See, e.g., Stein v. New York</u>

---

[3] Mindful of Local Rule 23's limitation on the citation of unpublished summary orders the undersigned includes the <u>Pavlov</u> case for the sake of completeness given its citation in the <u>Feinberg</u>, <u>World Wrestling</u>, <u>United Limousine</u>, <u>Drinkwine</u> and <u>Toussie</u> decisions.

Stair Cushion Co., No. 04-4741 (DRH), 2006 WL 319300, at *4 (E.D.N.Y. 2006); Wood v. Inc.

Village of Patchogue, 311 F. Supp.2d 344, 357 (E.D.N.Y. 2004). The Second Circuit has made

clear that "the pattern and the enterprise need not be totally 'distinct and independent' so long as

the proof offered is sufficient to satisfy both elements." Indelicato, 865 F.2d at 1375, quoting

U.S. v. Mazzei, 700 F.2d 85, 89 (2d Cir. 1983); see also Calabrese v. CSC Holdings, Inc., 283 F.

Supp.2d 797, 811-12 (E.D.N.Y. 2003) (explaining that "[t]his Circuit has explicitly rejected the

view that evidence offered to prove the 'enterprise' and the 'pattern of racketeering activity' must

necessarily be distinct and holding that the plaintiffs [were] not required to establish that the

alleged enterprise and racketeering activity are two separate entities.").

In this case the complaint alleges facts which both establishes the elements of an enterprise

with an identifiable hierarchy and organization and a pattern of racketeering activity. As

previously noted, the structure of the enterprise described has the Blessingers at the top, directing

the scheme; the Broker defendants execute the Blessinger's orders to fraudulently obtain and

maintain insurance coverage; the Ownership defendants, namely Luxury Limited, K&J

Limousine, Inc., Reygan Conveyance Corp., and Transportation Planning Corp. held the policies

issued by Liberty; the Purchasing defendants procured the vehicles used in the Blessinger's

business and the Operating defendants (the various taxi and livery companies owed and operated

by the Blessingers) enjoyed the benefit of the insurance provided by Liberty. Given the Second

Circuit's guidance that "an association-in-fact is oftentimes more readily proven by what it *does*,

rather than by abstract analysis of its structure," United States v. Coonan, 938 F.2d 1553, 1559 (2d

Cir. 1991) (emphasis in original), the undersigned finds that the details in the complaint regarding

how the various enterprises operated and the roles played by each member sufficiently allege that

18

the defendants were associated-in-fact. United States v. Stolfi, 889 F.2d 378, 380 (2d Cir. 1989) ("We have held that a racketeering enterprise may consist of an association of separate legal entities."), citing United States v. Huber, 603 F.2d 387, 393-94 (2d Cir. 1979) (group of corporations can be a RICO enterprise). (Compl. at ¶¶ 6-7,10-20, 26, 28-29, 57-58, 73-94, 111).[4]

ii.    Pattern of Racketeering Activity

Defendants assert that the plaintiff has failed to allege a "pattern of racketeering activity." RICO defines a "pattern of racketeering activity" as requiring "at least two predicate acts of racketeering activity" committed within a ten-year period. 18 U.S.C. § 1961(5). "To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.' " DeFalco, 244 F.3d at 321 (quoting H.J. Inc., 492 U.S. at 239 (1989)). "A plaintiff may satisfy the continuity requirement by alleging either a close-ended pattern - that is, criminal conduct extending over a substantial period of time - or an open-ended pattern, i.e., past criminal conduct coupled with a threat of future criminal activity." United Limousine Service, Inc., 303 F. Supp.2d at 448, citing Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999). Here, the moving defendants argue that the complaint fails to adequately allege either open or closed-ended continuity.

(a) Open-Ended Continuity

"To satisfy open-ended continuity, the plaintiff need not show that the predicates extended

---

[4]It is worth noting that the instant complaint also describes that the Blessinger's taxi and livery business actually provides services and thus is an ongoing enterprise which would still exist even if the alleged racketeering activity ceased. (Compl. at ¶¶ 54, 57, 96-108). Thus, regardless of which distinctiveness standard is applied there can be little doubt that the enterprise element is adequately pled.

over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." First Capital, 385 F.3d at 180. In this Circuit, the "cases assessing whether a threat of continuity exists have looked first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed." GICC Capital Corp., 67 F.3d at 466 (collecting cases). "If the enterprise alleged is engaged in 'inherently unlawful' acts, there is a threat of continuing criminal activity and open ended continuity exists." Breslin, 397 F. Supp.2d at 401, quoting Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999). However, "if the enterprise is engaged in a legitimate business, an allegation of open ended continuity requires evidence supporting an inference that the predicate acts are the regular way of doing business, or that the nature of the predicate acts themselves implies a threat of continuing criminal activity." Id. (add'l citations omitted). "As the Second Circuit has advised, we must consider the 'overall context in which the acts took place' to determine whether sufficient continuity is alleged." Sumitomo Corp. v. Chase Manhattan Bank, No. 99 Civ. 4004 (JSM), 2000 WL 1616960, at *1 (S.D.N.Y. Oct. 30, 2000), citing United States v. Kaplan, 886 F.2d 536, 542 (2d Cir. 1989). While "a fraudulent scheme which targets a single business or person is deemed to be 'inherently terminable,' and thus incapable of presenting an open-ended threat of continuing criminal activity." Leung v. Law, 387 F. Supp.2d 105, 125-26 (E.D.N.Y. 2005), this rule is limited to circumstances where there would inevitably be a point at which the fraud on that victim would have ended because there would be "nothing left to loot." GICC Capital Corp. v. Technology Finance Group., Inc., 67 F.3d 463, 466 (2d Cir. 1995).

Here, the nature of the predicate acts alleged weighs in favor of a finding of open-ended

continuity as they suggest a threat of repetition continuing into the future. This is borne out by the fact that the Blessingers' taxi and livery business had an ongoing need to have auto liability insurance. The defendants' business practices as described in the complaint indicate that the defendants engaged in repeated fraudulent acts over a period of three years in order to obtain insurance for hundreds of vehicles. The allegations support an inference that the defendants would have continued to fraudulently obtain low cost insurance so long as they remained in business and that their efforts in this respect would not have stopped but for Liberty's discovery of their fraud. Thus, the court finds that the complaint adequately alleges open-ended continuity.

(b) Closed-Ended Continuity

"A closed-ended pattern of racketeering activity involves predicate acts 'extending over a substantial period of time.' " First Capital, 385 F.3d at 181 (quoting GICC Capital Corp. v. Technology Fin. Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995)). In determining whether the "substantial period of time" element has been satisfied, "'the Second Circuit has never held a period of less than two years'" to be sufficient. United Limousine, 303 F.2d at 448, quoting Oak Beverages, Inc. v. Tomra of Massachusetts, L.L.C., 96 F. Supp.2d 336, 347 (S.D.N.Y. 2000), see also DeFalco, 244 F.3d at 321. Although the primary consideration in evaluating whether closed continuity exists, "the court also considers factors such as the 'number of predicate acts, the number of both participants and victims, and the presence of separate schemes' as relevant. . . ." Breslin, 397 F. Supp.2d at 401.

In this case, the plaintiff has alleged as the initial predicate act the August 7, 2002 application for auto insurance on behalf of K&J Limousine, Inc. mailed to Liberty. (Compl. at ¶ 116). The last predicate act alleged is the July 20, 2005 mailed response on behalf of KMO

Transportation to a request for information from Liberty (Id.). During the nearly three years

between these mailings, the complaint alleges fifty-eight instances of the defendants' use of the

mails and wires made in furtherance of the defendants' schemes to defraud Liberty. (Id.). Thus,

the complaint also sufficiently alleges a closed-ended pattern of racketeering activity.

      B. Section 1962(d)

Count eight of the complaint alleges a claim for RICO conspiracy under 18 U.S.C. §

1962(d) against all of the defendants. That section provides that "[i]t shall be unlawful for any

person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18

U.S.C. § 1962(d). In order to state a claim under Section 1962(d), the plaintiff must allege facts

from which it can be inferred that there was an agreement involving each of the defendants to

commit at least two predicate acts. Tuscano v. Tuscano, 403 F. Supp.2d 214, 229 (E.D.N.Y.

2005), citing Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990). The

manifestation of the agreement may be through "words or actions." R.D. Management Corp. v.

Samuels, No. 02 CV 4876, 2003 WL 21254076 (S.D.N.Y. May 29, 2003), citing Int'l

Brotherhood of Teamsters v. Carey, 163 F. Supp.2d 271, 285 (S.D.N.Y. 2001); Cofacredit, 187

F.3d at 244. While Rule 9(b) does not apply to claims of conspiracy, a plaintiff must nevertheless

provide some factual basis for the legal conclusion that a conspiracy existed. Andreo I, 651 F.

Supp. at 883 (citations omitted). Liability under Section 1962(d) may be found where the

defendants agreed to act in furtherance of a fraudulent scheme even if a conspirator himself did

not commit or agree to commit the two or more predicate acts. Calabrese, 283 F. Supp.2d at 813,

citing Salinas v. United States, 522 U.S. 52, 63, 118 S. Ct. 469 (1997).

Applying these standards, the undersigned finds that he section 1962(d) claim is

adequately pled. Thus, as noted above the complaint details fifty-eight instances of the defendants' use of the mails and wires sent by no less than seven participants in furtherance of at least five alleged schemes for the benefit of the individual defendants and their corporate alter egos. ¶¶ 6-20, 58-71, 73-111, 114-117, 135-36). These allegations clearly support a conspiracy claim among the defendants, and, accordingly, the undersigned recommends that the defendants' motion to dismiss the Section 1962(d) be denied.

Common Law Claims

      a.     Plaintiff's Fraud Claims

To sustain a common law fraud claim in New York, "plaintiffs must plead that defendants made 'a representation of fact, which was untrue and either known by defendant to be untrue or recklessly made', which was offered to deceive and to induce the other party to act upon it, and which caused injury." <u>Calabrese</u>, 283 F. Supp.2d at 814, citing <u>Cyber Media Group</u>, 183 F. Supp.2d at 580. The heightened pleading requirements of Rule 9(b) apply to these state law fraud claims. Thus, the plaintiff must allege the specific circumstances constituting the overall fraud scheme with adequate particularity. <u>Calabrese</u>, 283 F. Supp.2d at 814.

As detailed above, the plaintiff has sufficiently stated the circumstances surrounding the defendants' scheme to defraud. Plaintiff claims that the defendants represented, for example, that their various companies were operating in a more favorable territory and that they had no prior carrier, accident or loss information. (Compl. at ¶¶ 75, 78). The complaint also alleges that the defendants represented that the corporate entities were unrelated when, in fact they used vehicles interchangeably and shared the same business address and telephone number. (<u>Id</u>. at ¶¶ 59,64-69). Plaintiff further alleges that the defendants knew that their representations were false. According

23

to the plaintiff, the false and misleading representations were made by the defendants in an effort to reduce the cost of their auto insurance premiums and they were successful in this regard thereby causing injury to the plaintiff. These allegations adequately state a claim for common law fraud in New York and include sufficient particularity in accordance with Rule 9(b). Thus, the undersigned recommends that the defendants' motion to dismiss the fraud-based claims be denied.

b.  Contract-Based Claims

According to the moving defendants, the contract-based claims should be dismissed pursuant to Rule 12(b)(6) except as against the policyholder defendants, namely Luxury Limited, K&J, Transportation Planning, Reygan and KMO, because contract liability for the unpaid premiums is limited to the policyholders. The court disagrees. As the complaint makes clear, the plaintiff alleges that the corporate entities were alter egos of one another as well as of the Blessinger defendants. (Compl. at 57-71). As such the individual Blessinger defendants, who allegedly owned and controlled the corporate entities, are subject to vicarious liability. Moses v. Martin, 360 F. Supp.2d 533, 541 (S.D.N.Y. 2004); Rolls-Royce Motor Cars, Inc. v. Carriage House Motor Cars, Ltd., 929 F. Supp. 117, 121-22 (S.D.N.Y. 1996). Thus, the complaint states cognizable contract-based claims as against the moving defendants and, accordingly, the undersigned recommends that this prong of the defendants' motion be denied.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within 10 days from service of this Report. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. June 30,

1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992).

Dated:  Central Islip, New York
        January 24, 2007                          _____
                                                  Arlene R. Lindsay
                                                  United States Magistrate Judge